UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
GREENVILLE DIVISION

IN RE:                                    )        CASE NO. 19-01430-5-JNC
                                          )
Michael W. Bateman,                       )        Chapter 13
                                          )
                        Debtor.           )

## MOTION FOR IN REM RELIEF

WBL SPE II, LLC (hereinafter "Movant"), by and through counsel, moves the Court for relief from the automatic stay provisions of 11 U.S.C. §§ 362(a) and 1301(a) to the extent applicable and respectfully shows as follows:

### PARTIES AND JURISDICTION

1.      Movant is a limited liability company duly organized and operating under the laws of the State of Delaware , with an office location in Jersey City, New Jersey.

2.      The Debtor is a citizen and resident of Beaufort County, North Carolina.

3.      The Court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 1334 and the "Referral Order" entered herein by the Chief United States District Court Judge for the Eastern District of North Carolina. The Court also has jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 151 and 157(b) in that it is a core proceeding.

### ALLEGATIONS

4.      On December 21, 2011, the Debtor filed a petition under Chapter 11, case no. 11-09646-8-DMW.  Thereafter the Debtor's Plan was confirmed. The Debtor subsequently defaulted under the Plan.

5.      On June 1, 2016, Bethel Equipment Company, Inc. (hereinafter "Bethel Equipment"), executed and delivered to World Business Lenders, LLC (hereinafter "WBL") a

certain Business Promissory Note and Security Agreement (hereinafter "Note") in the sum of $110,000.00. A true copy of the Note is appended hereto, identified as "Exhibit 1," and the same is incorporated herein by reference.

6.      Contemporaneously with the execution of the Note and to induce WBL to extend credit to Bethel Equipment and Debtor executed and delivered to WBL a certain Continuing Guaranty. A true copy of the Continuing Guaranty is appended hereto, identified as "Exhibit 2," and the same is incorporated herein by reference.

7.      As shown in said Business Promissory Note and Security Agreement, Bethel Equipment granted WBL a security interest in and to the personal property described therein; to wit, including, but not limited to, all goods, farm products, inventory, equipment, furniture, money, instruments, accounts, accounts receivable, contract rights, documents, chattel paper, general intangibles (hereinafter "Collateral"), including, but not limited to, all products and proceeds of the Collateral and all additions and accessions to, replacements of, insurance proceeds in, and documents covering the Collateral, all property received wholly or partly in trade or exchange for Collateral, all leases of Collateral and all rents, revenues, issues, profits and proceeds arising from the sale, lease encumbrance, collection, or any other temporary or permanent disposition, of the Collateral or any interest therein, of Bethel Equipment with said security interest being granted and reserved to WBL until the balance due on the Note had been paid in full.

8.      Also to further induce WBL to extend credit to Bethel Equipment,  on June 1, 2016, the Debtor and Leonore A. Bateman executed and delivered to Old Republic National Title Insurance Company as Trustee a Deed of Trust, thereby granting a lien on the real property described as 4909 River Road, Washington, NC 27889 (hereinafter "Real Property"). A true copy

of the Deed of Trust is appended hereto, identified as "Exhibit 3" and the same is incorporated herein by reference.

9.    The Deed of Trust was properly recorded on June 8, 2016 in Book 1902 at Page 67-82 of the Beaufort County Public Registry.

10.    On August 4, 2016 WBL sold, transferred and assigned all right, title and interest in and to the Deed of Trust to WBL SPO I, LLC (hereinafter "WBL SPO") for value.

11.    Bethel Equipment and the Debtor have defaulted under the provisions of the Note and Guaranty by failing to pay WBL SPO in accordance with the terms of the Note.

12.    Based on said default, WBL SPO declared the Note and Security Agreement and Continuing Guaranty in default, accelerated the balance due and made demand upon Bethel Equipment and the Debtor for payment on the same and upon Bethel Equipment for possession of the Collateral. Despite due demand, Bethel Equipment and the Debtor failed and refused to pay the balance due or to surrender possession of the Collateral.

13.    On June 29, 2017 WBL SPO, transferred and assigned all right, title and interest in and to the Deed of Trust to Movant or value; and Movant is the current owner and holder thereof.

14.    Thereafter, on September 29, 2017, WBL SPO caused a special proceeding to be filed seeking to foreclose on the real property, case # 17-SP-135, and a civil proceeding to be filed seeking a monetary judgment and possession of the Collateral, case # 17-CVS-724.

15.    On January 18, 2018, the Debtor filed his second Petition under Chapter 13 in the Eastern District of North Carolina, Greenville Division, case # 18-00253. At the time of the filing of this petition, the outstanding balance due on said Note and Security Agreement was $132,865.25. This case was later dismissed on June 5, 2018 based on a default in Plan payments.

16.     On August 27, 2018, Movant reactivated the special proceeding case # 17-SP-135 against Bethel Equipment and the Debtor and Movant obtained an Order allowing a foreclosure sale and scheduled a sale for April 2, 2019.

17.     On January 22, 2019, Movant obtained an Order and Judgment against Bethel Equipment and the Debtor. A true copy of the Order and Judgment is appended hereto, identified as "Exhibit 4" and the same is incorporated herein by reference.

18.     On April 1, 2019, the Debtor filed this third petition under Chapter 13 which was one day before the foreclosure sale.

19.     The Debtor is currently in default on the terms of their Note and Security Agreement, Guaranty, and Deed of as of April 1, 2019, the outstanding balance due on said Note and Security Agreement was $226,006.90 and interest continues to accrue on the unpaid balance at $190.23 per day from and after April 1, 2019 until paid, plus attorneys' fees and expenses.

20.     Based on the actions of the Debtor, the petitions were filed as an attempt to hinder, delay and defraud Movant in moving forward with its foreclosure sale.

### Legal Argument

21.     As referenced above, this case represents the second bankruptcy petition filed that has affected the Real Property, and 11 U.S.C. § 362(d)(4) provides that with respect to a stay against Real Property, the Court may grant *"in rem"* relief from stay, if it finds that the filing of the petition was part of the scheme to "hinder, delay, or defraud" a creditor that involved either a transfer of property, or multiple bankruptcy filings affecting such Real Property.

22.     Movant requests that, given this prolonged history, the multiple bankruptcy filings and the continued accrual of ever increasing arrearages, the Court enter an Order, effective immediately under 11 U.S.C. § 362(d)(4), providing it *in rem* relief from stay in respect to the real

property, and binding in any further bankruptcy petitions the Debtor or any other interested party may file.

23.    The filing of the third petition was done in bad faith.

24.    Pursuant to § 362(d)(1) of the Bankruptcy Code, the Court may modify the automatic stay for lack of adequate protection or any other grounds for cause, including bad faith. 11 U.S.C. § 362(d)(1); see In re Henderson, 395 B.R. 593, 899 (Bankr. D.S.C. 2008). Alternatively, the Court may modify the automatic stay under section 362(d)(2) if the debtor does not have equity in such property, and such property is not necessary to an effective reorganization that is in prospect. Id. § 362(d)(2). Further, pursuant to section 362(d)(4), the court may modify the stay of an act against real property if the court finds that "the filing of the petition was part of a scheme to delay, hinder, or defraud creditors that involved . . . multiple bankruptcy filings affecting such real property." The Debtor bears the burden of proof on lack of cause, the existence of adequate protection, and the necessity of the collateral for an effective reorganization that is within reasonable prospect. See 11 U.S.C. § 362(g).

25.    Cause exists to modify the automatic stay in rem. The Debtor has shown no intention or ability to pay on the Note and Security Agreement. The continuation of the stay against the Real Property will only serve to further delay an inevitable foreclosure.

26.    In determining whether a Debtor has acted in bad faith to warrant in rem relief under section 362(d)(4), four factors are considered: "1) strategic filing of bankruptcy petitions to prevent collection; 2) multiple petitions to protect common property; 3) lack of evidence of changed circumstances between filings; and 4) inability to fund a plan." Henderson, 395 B.R. at 901; In re Macaulay, 2012 WL 2919154, at *3 (Bankr. D.S.C. July 16, 2012). All four circumstances are present in this case.

27.     None of the filings evidence any changed circumstances.

28.     Based on the information in the record, it is highly unlikely the Debtor will be able to fund a plan. In order to retain the Real Property, the Debtor will have to modify the terms of the Note and Security Agreement and complete payments of the claim within the life of the plan." In re Martin, 444 B.R. 538, 545 (Bankr. M.D.N.C. 2011). This option is not realistic, the Debtor proposes to pay into the Plan $6,500.00 of which the Debtor's Schedule "J" reflects the Debtor only has $5,480.00 to pay into the Plan. As of April 1, 2019, the estimated balance due to Movant on the Note is  $226,006.90 and at the rate of 5.5% over a term of 60 months, the estimated monthly payment to Movant alone would be $4,316.99.  The mortgage payment on the Debtor's primary residence was $2,294.98 a month, and the Debtor was in arrears in the sum of $33,912.74 according to Proof of Claim # 9 filed in the Debtor's second petition. Since the filing of the Debtor's second bankruptcy case the Debtor's income has been based on unconfirmed income and commissions due to the Debtor. It is very unlikely that the Debtor has sufficient provable income to confirm a feasible plan. The Debtor bears the burden of proof on this issue.

29.     Given Debtor's complete default in payments, inability to propose a confirmable plan, inability to meet the most basic requirements, and the pattern of using the bankruptcy process to delay the foreclosure and obtaining possession of the Collateral and frustrate the rights of Movant, cause exists to modify the automatic stay in rem. Debtor has not demonstrated that he is using the bankruptcy process as a meaningful attempt to successfully reorganize as opposed to causing Movant unnecessary delay and expense in an attempt to prevent the finalization of the foreclosure of the Real Property and obtaining possession of the Collateral.

30.     The relief prayed for herein is not granted, Movant will suffer immediate and irreparable injury, loss and damage.

31.     Movant hereby gives notice that it may submit a declaration or affidavit regarding any issue(s) raised in this contested matter in accordance with Rules 803(6), 902(11), and 902(12) of the Federal Rules of Evidence.

WHEREFORE, Movant prays the Court as follows:

1.     That the preliminary and final hearing be consolidated into one hearing;

2.     That, Movant respectfully requests that the Court grant In Rem Relief pursuant to 11 U.S.C. § 362(d)(4) and to the extent applicable under § 1301(a) as set forth herein;

3.     That, alternatively, Movant requests that the Court modify the stay provisions of 11 U.S.C. § 362(a) and to the extent applicable § 1301(a) to allow Movant and any Substitute Trustee to complete the foreclosure on the Real Property and pursue such rights as permitted by law and the Note and Deed of Trust;

4.     That the Court waive the fourteen (14) day period imposed by Rule 4001 of the Federal Rules of Bankruptcy Procedure and order that the automatic stay be immediately terminated; and

5.     That Movant have such other and further relief as to the Court may deem just and proper.

This the $Z5$ , day of April, 2019.

HUTCHENS LAW FIRM, LLP
Attorneys for WBL SPE II, LLC

By:_____
William Walt Pettit
N.C. Bar No. 9407
6230 Fairview Road, Suite 315
Charlotte, N.C. 28210
Telephone: (704) 357-6262
Email: walt.pettit@hutchenslawfirm.com

DocuSign Envelope ID: 1!

**WV** World Business Lenders
WE LEND, YOU GROW

## BUSINESS PROMISSORY NOTE AND SECURITY AGREEMENT

**BORROWER:** Bethel Equipment Company, Inc.

**PRINCIPAL (including processing fees): $110,000.00**

**DATE:** 6/1/2016



EXHIBIT

**1. PROMISE TO PAY:** Bethel Equipment Company, Inc. ("Borrower"), with its principal place of business located at 6677 Hwy 11 N, Bethel, North Carolina, 27812, does hereby promise to pay to the order of **WORLD BUSINESS LENDERS, LLC** ("Lender") at its offices located at 120 West 45th Street, New York, New York 10036, or at such other location or in such other manner as designated by Lender, the sum of **ONE HUNDRED TEN THOUSAND DOLLARS AND ZERO CENTS ($110,000.00)** ("Principal") plus interest at the daily interest rate set forth below in Section 2 in accordance with the payment schedule set forth below in Section 3.

**2. INTEREST RATE:** The unpaid Principal shall bear interest at the rate of **0.299726027397% per day** until paid in full.

**3. PAYMENT SCHEDULE/APPLICATION OF PAYMENTS:** Borrower shall repay the Principal and interest commencing on **6/3/2016** and on each Business Day thereafter until **6/2/2017** with each daily payment equaling **$720.24**, followed by a final payment of **$719.08** on **6/5/2017**, when any remaining outstanding Principal, interest and other unpaid charges shall be due and payable in full. "Business Day" means any Monday through Friday, except Federal Reserve holidays. The period commencing on **6/3/2016** and ending on **6/5/2017** is referred to as the "Repayment Period."

All payments shall be made by automatic ACH debit from the "Designated Checking Account" set forth in the Business Loan Authorization Agreement for Direct Deposit (ACH Credit) and Direct Payments (ACH Debits) given by Borrower to Lender, and Borrower shall maintain balances in the Designated Checking Account sufficient to make each daily payment due under this Business Promissory Note and Security Agreement ("Loan Agreement").

Payments shall be applied on the date received first to late charges and other charges due under this Loan Agreement, then to unpaid accrued interest, and then to Principal.

**4. PREPAYMENT:** Borrower has the right to prepay the unpaid Principal in full at any time, but may not make partial prepayments (except as required by applicable law). Any prepayment shall include a prepayment charge equal to the greater of (a) fifteen percent (15%) of the amount of the unpaid Principal or (b) the aggregate amount required to be repaid by Borrower to Lender during the Repayment Period reduced by (i) the aggregate amount of any payments made by Borrower to Lender pursuant to Section 3 above prior to the date of such prepayment and (ii) the amount of the unpaid Principal. This prepayment charge is in addition to any interest calculated and accrued in accordance with Section 2 above. No prepayment is permitted unless all outstanding charges are paid in full as of the date of prepayment. If Borrower desires to prepay, Borrower shall contact Lender at its address above in Section 1 or at 212-293-8200, and Lender shall provide Borrower with the amount necessary to prepay as of a date designated by Borrower. For the avoidance of doubt, as permitted under applicable law, if the Obligations have been accelerated on the happening of an Event of Default, payment of Principal and interest shall be deemed a prepayment for purposes of this Section 4.

**5. RETURNED PAYMENT CHARGE:** Borrower will pay a charge of **thirty-five dollars ($35.00)** in connection with any payment by check or electronic transfer that is returned unpaid because of an insufficient

DocuSign Envelope ID: 1...
World Business Lenders

balance in the Designated Checking Account or otherwise.

**6. SECURITY INTEREST:** Borrower grants to Lender a security interest in and to any and all property as described below in this Section 6 to secure payment of all debts, obligations and liabilities of Borrower to Lender evidenced by this Loan Agreement or any prior loan agreement with Lender ("Obligations"). This is a continuing security interest and will continue in effect even though all or any part of the Obligations is paid in full and even though for a period of time Borrower may not be indebted to Lender. The collateral includes the property purchased with the proceeds described as follows (if any): **NONE** , ("Purchase Money Collateral") and also includes all personal property now owned or hereafter acquired by the Borrower (which, along with the Purchase Money Collateral, is collectively referred to as "Collateral"), including, but not limited to, all goods (except consumer goods), farm products, inventory, equipment, furniture, money, instruments, accounts, accounts receivable, contract rights, documents, chattel paper, general intangibles, including, but not limited to, all products and proceeds of Collateral and all additions and accessions to, replacements of, insurance proceeds of, and documents covering Collateral, all property received wholly or partly in trade or exchange for Collateral, all leases of Collateral and all rents, revenues, issues, profits and proceeds arising from the sale, lease encumbrance, collection, or any other temporary or permanent disposition, of the Collateral or any interest therein. Borrower agrees that Lender may file any financing statement, lien entry form or other document Lender requires in order to perfect, amend or continue Lender's security interest in the Collateral and Borrower agrees to cooperate with Lender as may be necessary to accomplish said filing and to do whatever Lender deems necessary to protect Lender's security interest in the Collateral.

Borrower shall:  maintain the Collateral in good condition and repair and not permit its value to be impaired; keep it free from all liens, encumbrances and security interests (other than those created or expressly permitted by this Loan Agreement); defend it against all claims and legal proceedings by persons other than Lender; pay and discharge when due all taxes, license fees, levies and other charges upon it; not sell, lease or otherwise dispose of it or permit it to become a fixture or an accession to other goods, except as specifically authorized by Lender in writing; and not permit it to be used in violation of any applicable law, regulation or policy of insurance. Lender is authorized to examine the Collateral wherever located at any reasonable time or times and Borrower shall assist Lender in making any such inspection.

Borrower shall pay all expenses and, upon request, take any action reasonably deemed advisable by Lender to preserve the Collateral or to establish, determine priority of, perfect, continue perfected, terminate and/or enforce Lender's interest in the Collateral or rights under this Loan Agreement and, further, Borrower authorizes Lender, with full power of substitution, to execute in Borrower's name any documents necessary to perfect, amend or to continue Lender's interest in the Collateral or rights under this Loan Agreement or to demand termination of filings of other secured parties. Lender has no duty to protect, insure or realize upon the Collateral. Loss of or damage to the Collateral shall not release Borrower from any of the Obligations.

**7. WARRANTIES:** Borrower warrants that:

(a) Borrower is the owner of or is acquiring the Purchase Money Collateral free of all liens, encumbrances and security interests (except Lender's security interest), and is the owner of all other Collateral free of all liens, encumbrances and security interests, except Lender's security interest and the following security interests of: NONE;

(b) the proceeds of this Loan Agreement will be used for business purposes only, and not for personal, consumer, family or household purposes or to purchase personal, consumer, family or household goods;

(c) the Collateral will be kept at Borrower's address set forth above in Section 1, or at the following address:
NONE;

World Business Lenders

(d) Borrower's name in Section 1 above is its exact name on its organizing and/or registered documents, if any, and is Borrower's principal place of business. Borrower shall immediately advise Lender of any change in Borrower's name or address as set forth above in Section 1;

(e) Borrower is duly organized, validly existing and in good standing under the law of the jurisdiction in which it is organized, and has all licenses and authorizations necessary to carry on its business as now being conducted;

(f) Borrower has the full power and authority to execute, deliver and perform all transactions contemplated by this Loan Agreement and the performance of and compliance with the terms of this Loan Agreement will not violate the Borrower's organizational documents or constitute a default of any contract, agreement or other instrument to which Borrower is a party;

(g) Borrower has duly authorized the execution, delivery and performance of this Loan Agreement and has duly executed and delivered this Loan Agreement, and this Loan Agreement constitutes a legal, valid and binding obligation of the Borrower, enforceable against it in accordance with its terms;

(h) there is no action, suit, proceeding or investigation pending or, to Borrower's knowledge, threatened against or affecting it or any of its assets before or by any court or other governmental authority which, if determined adversely to it, would have a material adverse effect on its financial condition, business or prospects, or the value of the Collateral; and

(i) Borrower will provide any financial information on request or permit an examination of its books and records to permit Lender to confirm Borrower's ability to pay its Obligations and all other financial obligations.

8. **DEFAULT:** On the happening of any of the following events (each an "Event of Default"):

(a) failure by Borrower to pay any daily or other payment required by this Loan Agreement when due;

(b) failure by Borrower to observe, perform, keep or abide by any term, covenant or condition contained in this Loan Agreement, or any other document or instrument given to Lender;

(c) the filing of a bankruptcy proceeding, assignment for the benefit of creditors, issuance of a judgment execution, garnishment or levy against, or the appointment of a representative of any kind for the commencement of any proceeding for relief from indebtedness by or against Borrower;

(d) the happening of any event, which, in the reasonable judgment of Lender, adversely affects Borrower's ability or the ability of any guarantor of Borrower's Obligations under this Loan Agreement ("Guarantor") to repay Borrower's Obligations, or materially affects the value of the Collateral;

(e) any written representation, statement or warranty made to Lender by Borrower or any Guarantor is untrue or is breached;

(f) the occurrence of (I) a default under any guaranty of Borrower's Obligations ("Guaranty"), or any other document or instrument given to Lender, or (II) an event of default under any other loan agreement that Borrower may have with any other lender;

(g) any Guaranty is revoked or becomes unenforceable for any reason;

(h) Lender, upon examination of Borrower's financial information during the term of this Loan Agreement, becomes insecure in Borrower's ability to pay the Obligations,

DocuSign Envelope ID:
World Business Lenders
WE LEAD, YOU GROW.

Lender, at its option, without notice or demand (except as required by applicable law), may (A) declare the entire unpaid balance of all Obligations under this Loan Agreement or other agreements immediately due and payable, and shall have the right to proceed to collect such Obligations under applicable law and enforce its rights under any Guaranty; and (B) proceed against the Collateral as permitted under the applicable Uniform Commercial Code or any other applicable law. As permitted under the Uniform Commercial Code, Lender may take possession of Collateral without notice or hearing, which Borrower waives, and upon demand, Borrower shall assemble the Collateral and make it available to Lender at any convenient place designated by Lender. Lender's receipt of any payment after the occurrence of an Event of Default, whether or not the Obligations have been accelerated, shall not constitute a waiver of the default or of Lender's rights or remedies upon such default, including Lender's right to accelerate the unpaid balance of the Obligations and pursue collection thereof. Election by Lender to pursue or waive any remedy shall not exclude pursuit of any other remedy.

**9. ATTORNEYS' FEES AND COLLECTION COSTS:** In the event Lender retains counsel with respect to enforcement of its rights under this Loan Agreement or any other document or instrument given to Lender, Borrower agrees to pay all expenses of Lender in enforcing its rights to collect the Obligations or in taking possession, holding, preparing for disposition, and disposing of the Collateral, including Lender's reasonable attorneys' fees (whether or not an action is commenced and whether or not in the court of original jurisdiction, appellate court, bankruptcy court or otherwise) and all costs of collection of any judgment and any costs of appeal.

**10. SALE OF LOAN AGREEMENT:** This Loan Agreement, or an interest in this Loan Agreement, together with the rights to the Collateral, may be sold, assigned, transferred or conveyed by Lender one or more times.

**11. INDEMNIFICATION:** Except for Lender's willful misconduct, Borrower will indemnify and save Lender harmless from all loss, costs, damage, liability or expenses (including, without limitation, court costs and reasonable attorneys' fees) that Lender may sustain or incur by reason of defending or protecting Lender's security interest or the priority thereof or enforcing its rights to collect the Obligations, or in the prosecution or defense of any action or proceeding concerning any matter growing out of or in connection with this Loan Agreement and/or any other documents or instruments now or hereafter executed in connection with this Loan Agreement and/or the Obligations and/or the Collateral. This indemnity shall survive the repayment of the Obligations and the termination of this Loan Agreement.

**12. MISCELLANEOUS:**

(a) Delay or failure of Lender to exercise any of its rights under this Loan Agreement shall not be deemed a waiver thereof. No waiver of any condition or requirement shall operate as a waiver of any other or subsequent condition or requirement.

(b) Borrower waives trial by jury with respect to any action arising out of or relating to this Loan Agreement.

(c) This Loan Agreement may not be modified orally, and may be modified only upon written agreement signed by Lender.

(d) This Loan Agreement shall be governed by the laws of the State (or Commonwealth, as the case may be) of Borrower's address set forth above in Section 1 ("Borrower's State").

(e) Any action or proceeding to enforce any rights or obligations arising out of this Loan Agreement shall be commenced in any state or federal court located in Borrower's State, and Borrower waives personal service of process and agrees that a summons and complaint commencing an action or proceeding in any such court shall be properly served and confer personal jurisdiction if served by registered or certified mail to Borrower at the address specified by Borrower above in Section 1, or

DocuSign Envelope ID:
World Business Lenders
AS LEND, YOU GROW

as otherwise provided by the federal law or the laws of Borrower's State. Borrower and Lender agree that venue is proper in such courts and that such courts shall have sole jurisdiction over such action.

(f) Without affecting the liability of Borrower or any Guarantor, Lender may accept partial payments marked "in full" or otherwise, release or impair any Collateral or agree not to sue any party liable on this Loan Agreement without waiving any of its rights hereunder.

(g) Presentment, protest, demand and notice of dishonor are waived.

(h) Without affecting the liability of any Guarantor, Lender may from time to time, without notice, renew or extend the time for payment.

(i) Borrower expressly agrees that the interest rate set forth above in Section 2 is appropriate under the circumstances and shall be the applicable rate at which unpaid Principal (and Costs) shall bear interest under this Loan Agreement, notwithstanding any rate of interest prescribed by statute from time to time; provided, however, if fulfillment of any provisions of this Loan Agreement or any other instrument securing the Obligations is subject to a law that sets maximum interest rates or other charges, and that law is finally interpreted so that the interest or other fees collected or to be collected in connection with this Loan Agreement exceed the permitted limits, then (I) any such charge will be reduced by the amount necessary to reduce the charge to the permitted limit and (II) any sums already collected from Borrower that exceed the permitted limits will be refunded or credited to Borrower and the obligations created by this Loan Agreement shall be fulfilled to the limit of such validity as is permitted by law.

(j) Borrower shall keep the Collateral and Lender's interest in it insured under policies with such provisions, for such amounts and by such insurers as shall be satisfactory to Lender from time to time, and shall furnish evidence of such insurance satisfactory to Lender upon request. Borrower assigns (and directs any insurer to pay) to Lender the proceeds of all such insurance and any premium refund and authorizes Lender to endorse in the name of Borrower any instrument for such proceeds or refunds and, at the option of Lender, to apply such proceeds and refunds to any unpaid balance of the Obligations, whether or not due, and/or to restoration of the Collateral, returning any excess to Borrower. Lender is authorized, in the name of Borrower or otherwise, to make, adjust and/or settle claims under any insurance on the Collateral, or cancel the same after the occurrence of an Event of Default.

(k) If Borrower fails to perform any of Borrower's duties set forth in this Loan Agreement or in any evidence of or document relating to the Obligations, Lender is authorized, in Borrower's name or otherwise, to take any such action, including, without limitation, signing Borrower's name or paying any amount so required, and the cost ("Cost") shall be one of the Obligations secured by this Loan Agreement and shall be payable by Borrower upon Lender's demand with interest at the interest rate set forth above in Section 2 from the date of payment by Lender.

(l) Borrower releases Lender from any liability for any act or omission relating to the Obligations, the Collateral or this Loan Agreement, except Lender's willful misconduct.

(m) Invalidity or unenforceability of any provision of this Loan Agreement shall not affect the validity or enforceability of any other provision.

(n) The terms of this Loan Agreement shall be binding upon Borrower and its permitted successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

(o) Any of the Borrower, Lender or a Guarantor may choose to arbitrate any or all disputes and claims arising out of or relating to this Loan Agreement, the Guaranty or any other related document. A

DocuSign Envelope ID:

**World Business Lenders**
WE LEND, YOU GROW.

claim includes matters arising as an initial claim, counter-claim, cross-claim, third-party claim, or otherwise. If the Borrower, Lender or a Guarantor chooses to litigate any dispute or claim arising out of or relating to this Loan Agreement, the Guaranty or any related document through a judicial action, the decision to litigate shall not be deemed a waiver of arbitration, and if such judicial action is contested, any party may thereafter invoke its arbitration rights at any time before any discovery is taken in the judicial action. If the Borrower, Lender or a Guarantor seeks to have a dispute resolved by arbitration, that party must first send to the other party(ies) by certified mail, a written Notice of Intent to Arbitrate. If Borrower, Lender or a Guarantor do not reach an agreement to resolve the claim within 10 days after the Notice is received, any party may commence an arbitration proceeding with the American Arbitration Association ("AAA"). Lender will promptly reimburse Borrower or the Guarantor any arbitration filing fee; however, in the event that both the Borrower and the Guarantor must pay arbitration filing fees, Lender will only reimburse the Borrower's arbitration filing fee and, except as provided in the next sentence, the Lender will pay all arbitration administration and arbitrator fees. If the arbitrator finds that either the substance of any claim raised by Borrower or a Guarantor or the relief sought by Borrower or a Guarantor is improper or not warranted, as measured by the standards set forth in Federal Rule of Procedure 11(b), then Lender will pay the administration or arbitrator fees only if required by the AAA Rules. If the arbitrator grants relief to the Borrower or a Guarantor that is equal to or greater than the value of the relief requested by the Borrower or a Guarantor in the arbitration, Lender shall reimburse Borrower or the Guarantor, as applicable, for that party's reasonable attorneys' fees and expenses incurred for the arbitration. BORROWER AND LENDER AGREE THAT BY ENTERING INTO THIS LOAN AGREEMENT, EACH IS WAIVING THE RIGHT TO TRIAL BY JURY. BORROWER AND LENDER MAY BRING CLAIMS AGAINST ANY OTHER PARTY ONLY IN THEIR INDIVIDUAL CAPACITY AND NOT AS A PLAINTIFF REPRESENTATIVE OR CLASS MEMBER IN ANY PURPORTED REPRESENTATIVE OR CLASS PROCEEDING. Further, Borrower and Lender agree that the arbitrator may not consolidate proceedings for more than one person's claims, and may not otherwise preside over any form of a representative or class proceeding, and if this specific provision is found unenforceable, then the entirety of this arbitration clause shall be null and void. Any award by the individual arbitrator shall be final and binding, except for any appeal right under the Federal Arbitration Act ("FAA"), and may be entered and enforceable as a judgment in any court of competent jurisdiction, including as a judgment that permits Lender to initiate or complete the exercise of its remedies against, or its realization or foreclosure upon, any collateral or security provided for the benefit of Lender. This arbitration provision is made pursuant to a transaction in interstate commerce, and shall be governed by the Federal Arbitration Act at 9 U.S.C. Section 1.

DocuSign Envelope ID:

**World Business Lenders**
WE LEND, YOU GROW.

PRIOR TO SIGNING THIS LOAN AGREEMENT, BORROWER READ AND UNDERSTOOD ALL OF THE PROVISIONS OF THIS LOAN AGREEMENT. AFTER DUE CONSIDERATION, AND THE OPPORTUNITY TO CONSULT WITH OTHER LENDERS AND AN ATTORNEY, ACCOUNTANT OR OTHER COMPETENT PROFESSIONAL OF ITS CHOICE, BORROWER KNOWINGLY, WILLFULLY AND VOLUNTARILY AGREES TO THE TERMS OF THIS LOAN AGREEMENT.

BORROWER ACKNOWLEDGES RECEIPT OF A FULLY COMPLETED AND EXECUTED VERSION OF THIS LOAN AGREEMENT.

BORROWER: Bethel Equipment Company, Inc.

By: *Michael William Bateman*

Printed Name: Michael William Bateman

Title: President

REMAINDER OF PAGE INTENTIONALLY LEFT BLANK
ACKNOWLEDGMENT OF SIGNATURE APPEARS ON THE FOLLOWING PAGE

DocuSign Envelope ID: ...

**World Business Lenders**
WE LEAD, YOU GROW.

## ACKNOWLEDGMENT

STATE/COMMONWEALTH OF _____ )

) ss.:

COUNTY OF _____ )

On the _____ day of _____, in the year ____ before me, the undersigned, a notary public in and for said State/Commonwealth, personally appeared_____, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within Business Promissory Note and Security Agreement and acknowledged to me that she/he executed the same in her/his capacity as_____ of_____, and that by her/his signature on the Business Promissory Note and Security Agreement, the individual, or the person upon behalf of which the individual acted, executed the Business Promissory Note and Security Agreement.

_____
Notary Public
My Commission expires:

DocuSign Envelope ID:
**World Business Lenders**

EXHIBIT
2

**CONTINUING GUARANTY (Unlimited)**     Dated: 6/1/2016

**GUARANTY.** For value received, and to induce WORLD BUSINESS LENDERS, LLC ("Lender"), with offices at 120 West 45th Street, New York, New York 10036, to extend credit or grant or continue other credit accommodations to Bethel Equipment Company, Inc. ("Borrower"), the undersigned ("Guarantor," whether one or more) jointly and severally guarantees payment of the Obligations defined below when due or at the time any Borrower becomes the subject of bankruptcy or other insolvency proceedings. Except as provided below, "Obligations" mean all debts, obligations and liabilities of Borrower to Lender arising out of credit previously granted, credit contemporaneously granted or credit granted in the future by Lender to Borrower, Obligations include interest and charges and the amount of payments made to Lender or another by or on behalf of Borrower which are recovered from Lender by a trustee, receiver, creditor or other party pursuant to applicable federal or state law, and all costs, expenses and attorneys' fees at any time paid or incurred before and after judgment in endeavoring to collect all or part of any of the above, or to realize upon this Guaranty, or any collateral securing any of the above, including those incurred in successful defense or settlement of any counterclaim brought by Borrower or Guarantor or incident to any action or proceeding involving Borrower or Guarantor brought pursuant to the United States Bankruptcy Code. Obligations do not include personal, consumer, family or household transactions. Guarantor grants to Lender a security interest and lien in any credit balance and other money now owing or hereafter owed Guarantor by Lender. Lender may, at any time after the occurrence of an event of default with respect to any Obligation, without prior notice or demand, set off against any such credit balance or other money any amount owing upon the Obligations. This Guaranty also is secured by all existing and future security agreements between Lender and Guarantor. This Guaranty is valid and enforceable against Guarantor even though any Obligation is invalid or unenforceable against the Borrower.

**WAIVER.** Guarantor expressly waives (a) notice of the acceptance of this Guaranty, the creation of any present or future Obligation, default under any Obligation, proceedings to collect from the Borrower or anyone else, (b) all diligence of collection and presentment, demand, notice and protest, (c) any right to disclosures from Lender regarding the financial condition of the Borrower or the enforceability of the Obligations, and (d) all other legal and equitable defenses of surety ship and impairment of collateral. No claim, including a claim for reimbursement, subrogation, contribution or indemnification which Guarantor may, as a guarantor of the Obligations, have against a co-guarantor of any of the Obligations or against the Borrower shall be enforced or any payment accepted until the Obligations are paid in full and no payments to or collections by Lender are subject to any right of recovery.

**CONSENT.** With respect to any of the Obligations, Lender may from time to time before or after revocation of this Guaranty without notice to Guarantor and without affecting the liability of Guarantor (a) surrender, release, impair, sell or otherwise dispose of any security or collateral for the Obligations, (b) release or agree not to sue any guarantor or surety, (c) fail to perfect its security interest in or realize upon any security or collateral, (d) fail to realize upon any of the Obligations or to proceed against any Borrower or any guarantor or surety, (e) renew or extend the time of payment, (f) increase or decrease the rate of interest or the amount of the Obligations, (g) accept additional security or collateral, (h) determine the allocation and application of payments and credits and accept partial payments, (i) apply the proceeds of disposition of any collateral for the Obligations to any obligation of Borrower secured by such collateral in such order and amounts as it elects, (j) determine what, if anything, may at any time be done with reference to any security or collateral, and (k) settle or compromise the amount due or owing or claimed to be due or owing from the Borrower, which settlement or compromise shall not affect Guarantor's liability for the full amount of the unpaid Obligations. Guarantor expressly consents to and waives notice of all of the above. Guarantor consents to and authorizes Lender or its agents to obtain information concerning Guarantor's financial condition, including credit reports. Nothing contained in this Guaranty shall require Lender to first seek or exhaust any remedy against Borrower or to first proceed against any collateral or security for any of the Obligations or this Guaranty.

**PERSONS BOUND.** This Guaranty benefits and is enforceable by Lender, and its successors and assigns (collectively called "successors" and each a "successor"), and binds Guarantor, and Guarantor's heirs, personal representatives, successors and assigns. This Guaranty shall continue in full force and effect notwithstanding any change in structure or status of Borrower or Lender, whether by merger, consolidation, reorganization or otherwise, or assignment of this Guaranty to a successor Lender. **This Guaranty includes additional provisions on the next page.**

**REMAINDER OF PAGE INTENTIONALLY LEFT BLANK**

DocuSign Envelope ID:

**World Business Lenders**

WE LEND. YOU GROW.

---

**NOTICE TO GUARANTOR**

You are being asked to guarantee the past, present and future Obligations of Borrower. If Borrower does not pay, you will have to. You may also have to pay collection costs. Lender can collect the Obligations from you without first trying to collect from Borrower or another guarantor or proceeding against any collateral or other security for the Obligations.

---

(Guarantor Name) Michael William Bateman

(Guarantor Signature) _Michael William Bateman_
DocuSigned by:

(Guarantor Address) 4959 river road   Washington, NC 27889

---

**For Married Residents Only:** Each Guarantor who signs below represents that this obligation is incurred in the interest of his or her marriage or family.

X _____

---

DocuSign Envelope ID:
**World Business Lenders**

Acknowledgement to signature(s) on following pages.

## ADDITIONAL PROVISIONS

**ENTIRE AGREEMENT.** This Guaranty is intended by Guarantor and Lender as a final expression of this Guaranty and as a complete and exclusive statement of its terms, there being no conditions to the full effectiveness of this Guaranty. This Guaranty may not be supplemented or modified, except in writing by Lender.

**REPRESENTATIONS.** Guarantor acknowledges and agrees that Lender (a) has not made any representations or warranties with respect to, (b) does not assume any responsibility to Guarantor for, and (c) has no duty to provide information to Guarantor regarding, the enforceability of any of the Obligations or the financial condition of the Borrower. **Guarantor has independently determined the creditworthiness of Borrower and the enforceability of the Obligations and until the Obligations are paid in full will independently and without reliance on Lender continue to make such determinations.**

**REVOCATION.** This is a continuing guaranty and shall remain in full force and effect until Lender receives written notice of its revocation signed by Guarantor or actual notice of the death of Guarantor. Upon revocation by written notice or actual notice of death, this Guaranty shall continue in full force and effect as to all Obligations contracted for or incurred before revocation and, as to them, Lender shall have the rights provided by this Guaranty as if no revocation had occurred. Any renewal, extension or increase in the interest rate of any such Obligation, whether made before or after revocation, shall constitute an Obligation contracted for or incurred before revocation. Obligations contracted for or incurred before revocation shall also include credit extended after revocation pursuant to commitments made before revocation. Revocation by one Guarantor shall not affect any of the liabilities or obligations of any other Guarantor and this Guaranty shall continue in full force and effect with respect to them.

**INTERPRETATION.** The validity, construction and enforcement of this Guaranty are governed by the laws of the State/Commonwealth of North Carolina without regard to its conflicts of laws rules. All terms not otherwise defined have the meanings assigned to them by the applicable Uniform Commercial Code. Invalidity or unenforceability of any provision of this Guaranty shall not affect the validity or enforceability of any other provision.

**JURISDICTION.** Guarantor irrevocably consents with respect to any suit, action or proceeding relating to this Guaranty or any of the other loan documents relating to the Obligations, that venue shall be in any court of the State/Commonwealth of North Carolina or in the United States District Courts sitting in North Carolina, and Guarantor waives personal service of process and agrees that a summons and complaint commencing an action or proceeding in any such court shall be properly served and confer personal jurisdiction if served by registered or certified mail to Guarantor at the address specified by Guarantor above, or as otherwise provided by the laws of the State/Commonwealth of North Carolina or the United States of America. Guarantor agrees that venue is proper in such courts and that such courts shall have sole jurisdiction over such action.

**ARBITRATION.**

Any of the Borrower, Lender or a Guarantor may choose to arbitrate any or all disputes and claims arising out of or relating to this Guaranty or any other related document. A claim includes matters arising as an initial claim, counter-claim, cross-claim, third-party claim, or otherwise. If the Borrower, Lender or a Guarantor chooses to litigate any dispute or claim arising out of or relating to this Guaranty or any related document through a judicial action, the decision to litigate shall not be deemed a waiver of arbitration, and if such judicial action is contested, any party may thereafter invoke its arbitration rights at any time before any discovery is taken in the judicial action. If the Borrower, Lender or a Guarantor seeks to have a dispute resolved by arbitration, that party must first send to the other party(ies) by certified mail, a written Notice of Intent to Arbitrate. If Borrower, Lender or a Guarantor do not reach an agreement to resolve the claim within 10 days after the Notice is received, any party may commence an arbitration proceeding with the American Arbitration Association ("AAA"). Lender will promptly reimburse Borrower or the Guarantor any arbitration filing fee, however, in the event that both the Borrower and the Guarantor must pay arbitration filing fees, Lender will only reimburse the Borrower's arbitration filing fee and, except as provided in the next sentence, the Lender will pay all arbitration administration and arbitrator fees. If the arbitrator finds that either the substance of any claim raised by Borrower or a Guarantor or the relief sought by Borrower or a Guarantor is improper or not warranted, as measured by the standards set forth in Federal Rule of Procedure 11(b), then Lender will pay the administration and arbitrator fees only if required by the AAA Rules. If the arbitrator grants relief to the Borrower or a Guarantor that is equal to or greater than the value of the relief requested by the Borrower or a Guarantor in the arbitration, Lender shall reimburse Borrower or the Guarantor, as applicable, for that party's reasonable attorneys' fees and expenses incurred for the arbitration. GUARANTOR AND LENDER AGREE THAT BY ENTERING INTO THIS GUARANTY, EACH IS WAIVING THE RIGHT TO TRIAL BY JURY. GUARANTOR AND LENDER MAY BRING CLAIMS AGAINST ANY OTHER PARTY ONLY IN THEIR INDIVIDUAL CAPACITY AND NOT AS A PLAINTIFF REPRESENTATIVE OR CLASS MEMBER IN ANY PURPORTED REPRESENTATIVE OR CLASS PROCEEDING. Further, Guarantor and Lender agree that the arbitrator may not consolidate proceedings for more than one person's claims, and may not otherwise preside over any form of a representative or class proceeding, and if this specific provision is found unenforceable, then the entirety of this arbitration clause shall be null and void. Any award by the individual arbitrator shall be final and binding, except for any appeal right under the Federal Arbitration Act ("FAA"), and may be entered and enforceable as a judgment in any court of competent jurisdiction, including as a judgment that permits Lender to initiate or complete the exercise of its remedies against, or its realization or foreclosure upon, any collateral or security provided for the benefit of Lender. This arbitration provision is made pursuant to a transaction in interstate commerce, and shall be governed by the Federal Arbitration Act at 9 U.S.C. Section 1.

DocuSign Envelope ID:

**World Business Lenders**
WE LEND, YOU GROW

## JURY WAIVER

GUARANTOR KNOWINGLY AND VOLUNTARILY WAIVES TRIAL BY JURY IN ANY ACTION, PROCEEDING, CLAIM OR COUNTERCLAIM BASED UPON, ARISING OUT OF OR IN ANY WAY RELATING TO THIS GUARANTY, THE OBLIGATIONS GUARANTEED BY THIS GUARANTY OR ANY CONDUCT, ACT OR OMISSION OF LENDER, AND AGREES AND CONSENTS THAT ANY SUCH ACTION, PROCEEDING, CLAIM OR COUNTERCLAIM SHALL BE DECIDED BY TRIAL TO THE COURT WITHOUT A JURY. GUARANTOR ACKNOWLEDGES AND UNDERSTANDS THAT THIS WAIVER AND CONSENT CONSTITUTES A MATERIAL INDUCEMENT TO LENDER TO ENTER INTO THE TRANSACTION WITH THE BORROWER.

Guarantor Michael William Bateman

DocuSigned by:

*Michael William Bateman*

Acknowledgement to signature(s) on following pages.

BK I 9 0 2 PG 0 6 7



EXHIBIT

3

FOR REGISTRATION REGISTER OF DEEDS
Jennifer Leggett Whitehurst
Beaufort County, NC
June 08, 2016  02:52:35 PM
Book 1902 Page 67-82
FEE: $60.00
INSTRUMENT # 2016002529



INSTRUMENT # 2016002529

RECORDATION REQUESTED BY:
World Business Lenders, LLC
Prepared by:
~~WHEN RECORDED MAIL TO:~~
World Business Lenders, LLC
120 West 45th Street
New York, NY 10036
Montaj Malik
SEND TAX NOTICES TO:
World Business Lenders, LLC
120 West 45th Street
New York, NY 10036

Return to:
Lenders Title Solutions LLC
25400 US Highway 19 N, Suite 245
Clearwater, FL 33763

------------------------------------------------------------

Above this line for recordation only

### DEED OF TRUST

THIS DEED OF Trust dated   June 1, 2016 is made and executed between Michael W Bateman and Leonore A Bateman, as joint tenants with rights of survivorship whose address is 4909 River Road, Washington, NC 27889 (referred to below as "Grantor") and World Business Lenders, LLC, whose address is 120 W. 45th Street, New York, NY 10036 (referred to below as "Lender" and sometimes as "Beneficiary"); and Old Republic National Title Insurance Company, whose address is 400 Second Avenue, South, Minneapolis, MN  55401 (referred to below as "Trustee").

CONVEYANCE AND GRANT.   NOW, THEREFORE, as security for the indebtedness, advancements and other sums expended by the Beneficiary pursuant to this Deed of Trust and costs of collection (including attorneys' fees as provided in the Note) and other valuable consideration, the receipt of which is hereby acknowledged, Grantor has bargained, sold, given, granted and conveyed and does by these presents bargain, sell, give, grant and convey to Trustee, and Trustee's heirs or successors and assigns, for the benefit of Lender as Beneficiary, all of Grantor's right, title, and interest in and to the following described real property, together with all existing or subsequently erected or affixed buildings, improvements and fixtures; all easements, rights of way, and appurtenances; all water, water rights and ditch rights (including stock in utilities with ditch or irrigation rights); and all other rights, royalties, and profits relating to the real property, including without limitation all minerals, oil, gas, geothermal and similar matters, (the "Real Property") located in Beaufort County, State of North Carolina.

See Exhibit A, which is attached to this Deed of Trust and made a part of this Deed of Trust as if fully set forth herein.

The Real Property or its address is commonly known as 4909 River Road, Washington, NC 27889.

To have and to hold said Real Property with all privileges and appurtenances thereunto belonging, to the Trustee, his heirs, successors and assigns forever, upon the trusts, terms and conditions and for the uses hereinafter set forth.

Grantor presently assigns to Lender (also known as Beneficiary in this Deed of Trust) all of Grantor's right, title, and interest in and to all present and future leases of the Property and all Rents from the Property.  In addition, Grantor grants to Lender a Uniform Commercial Code security interest in the Personal Property and Rents.

THIS DEED OF TRUST, INCLUDING THE ASSIGNMENT OF RENTS AND THE SECURITY INTEREST IN THE RENTS AND PERSONAL PROPERTY, IS GIVEN TO SECURE  (A)  PAYMENT OF THE INDEBTEDNESS AND

BK 1 9 0 2 PG 0 6 8

**(B) PERFORMANCE OF ANY AND ALL OBLIGATIONS UNDER THE NOTE, THE RELATED DOCUMENTS, AND THIS DEED OF TRUST. THIS DEED OF TRUST IS GIVEN AND ACCEPTED ON THE FOLLOWING TERMS:**

**GRANTOR'S REPRESENTATIONS AND WARRANTIES.** Grantor warrants that: (a) this Deed of Trust is executed at Borrower's request and not at the request of Lender; (b) Grantor has the full power, right, and authority to enter into this Deed of Trust and to hypothecate the Property; (c) the provisions of this Deed of Trust do not conflict with, or result in a default under any agreement or other instrument binding upon Grantor and do not result in a violation of any law, regulation, court decree or order applicable to Grantor; (d) Grantor has established adequate means of obtaining from Borrower on a continuing basis information about Borrower's financial condition; and (e) Lender has made no representation to Grantor about Borrower (including without limitation the creditworthiness of Borrower).

**GRANTOR'S WAIVERS.** Grantor waives all rights or defenses arising by reason of any "one action" or "anti-deficiency" law, or any other law which may prevent Lender from bringing any action against Grantor, including a claim for deficiency to the extent Lender is otherwise entitled to a claim for deficiency, before or after Lender's commencement or completion of any foreclosure action, either judicially or by exercise of a power of sale. Grantor expressly waives, to the extent permitted by North Carolina law, all of Grantor's rights under (a) North Carolina General Statutes Sections 26-7 through Section 26-9, or any similar or subsequent laws, (b) North Carolina General Statutes Section 25-3-605 relating to the impairment of the collateral, or any similar or subsequent law, and (c) North Carolina General Statutes Section 25-9-501 and 25-9-504 with respect to the "commercial reasonableness" of any sale of collateral, or any similar or subsequent laws.

**PAYMENT AND PERFORMANCE.** Except as otherwise provided in this Deed of Trust, Borrower shall pay to Lender all Indebtedness secured by this Deed of Trust as it becomes due, and Borrower and Grantor shall perform all their respective obligations under the Note, this Deed of Trust, and the Related Documents.

**POSSESSION AND MAINTENANCE OF THE PROPERTY.** Borrower and Grantor agree that Borrower's and Grantor's possession and use of the Property shall be governed by the following provisions:

**Possession and Use.** Until the occurrence of an Event of Default, Grantor may (1) remain in possession and control of the Property; (2) use, operate or manage the Property; and (3) collect the Rents from the Property.

**Duty to Maintain.** Grantor shall maintain the Property in good condition and promptly perform all repairs, replacements, and maintenance necessary to preserve its value.

**Compliance With Environmental Laws.** Grantor represents and warrants to Lender that: (1) During the period of Grantor's ownership of the Property, there has been no use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance by any person on, under, about or from the Property; (2) Grantor has no knowledge of, or reason to believe that there has been, except as previously disclosed to and acknowledged by Lender in writing, (a) any breach or violation of any Environmental Laws, (b) any use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance on, under, about or from the Property by any prior owners or occupants of the Property, or (c) any actual or threatened litigation or claims of any kind by any person relating to such matters; and (3) Except as previously disclosed to and acknowledged by Lender in writing, (a) neither Grantor nor any tenant, contractor, agent or other authorized user of the Property shall use, generate, manufacture, store, treat, dispose of or release any Hazardous Substance on, under, about or from the Property; and (b) any such activity shall be conducted in compliance with all applicable federal, state, and local laws, regulations and ordinances, including without limitation all Environmental Laws. Grantor authorizes Lender and its agents to enter upon the Property to make such inspections and tests, at Grantor's expense, as Lender may deem appropriate to determine compliance of the Property with this section of the Deed of Trust. Any inspections or tests made by Lender shall be for Lender's purposes only and shall not be construed to create any responsibility or liability on the part of Lender to Grantor or to any other person. The representations and warranties contained herein are based on Grantor's due diligence in investigating the Property for Hazardous Substances. Grantor hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Grantor becomes liable for cleanup or other costs under any such laws; and (2)

BK I 9 0 2 PG 0 6 9

agrees to indemnify, defend, and hold harmless Lender against any and all claims, losses, liabilities, damages, penalties, and expenses which Lender may directly or indirectly sustain or suffer resulting from a breach of this section of the Deed of Trust or as a consequence of any use, generation, manufacture, storage, disposal, release or threatened release occurring prior to Grantor's ownership or interest in the Property, whether or not the same was or should have been known to Grantor.  The provisions of this section of the Deed of Trust, including the obligation to indemnify and defend, shall survive the payment of the Indebtedness and the satisfaction and reconveyance of the lien of this Deed of Trust and shall not be affected by Lender's acquisition of any interest in the Property, whether by foreclosure or otherwise.

**Nuisance, Waste.**  Grantor shall not cause, conduct or permit any nuisance nor commit, permit, or suffer any stripping of or waste on or to the Property or any portion of the Property.  Without limiting the generality of the foregoing, Grantor will not remove, or grant to any other party the right to remove, any timber, minerals (including oil and gas), coal, clay, scoria, soil, gravel or rock products without Lender's prior written consent.

**Removal of Improvements.**  Grantor shall not demolish or remove any Improvements from the Real Property without Lender's prior written consent.  As a condition to the removal of any Improvements, Lender may require Grantor to make arrangements satisfactory to Lender to replace such Improvements with Improvements of at least equal value.

**Lender's Right to Enter.**  Lender and Lender's agents and representatives may enter upon the Real Property at all reasonable times to attend to Lender's interests and to inspect the Real Property for purposes of Grantor's compliance with the terms and conditions of this Deed of Trust.

**Compliance with Governmental Requirements.**  Grantor shall promptly comply with all laws, ordinances, and regulations, now or hereafter in effect, of all governmental authorities applicable to the use or occupancy of the Property.  Grantor may contest in good faith any such law, ordinance, or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Grantor has notified Lender in writing prior to doing so and so long as, in Lender's sole opinion, Lender's interests in the Property are not jeopardized.  Lender may require Grantor to post adequate security or a surety bond, reasonably satisfactory to Lender, to protect Lender's interest.

**Duty to Protect.**  Grantor agrees neither to abandon or leave unattended the Property.  Grantor shall do all other acts, in addition to those acts set forth above in this section, which from the character and use of the Property are reasonably necessary to protect and preserve the Property.

**DUE ON SALE - CONSENT BY LENDER.**  Lender may, at Lender's option, declare immediately due and payable all sums secured by this Deed of Trust upon the sale or transfer, without Lender's prior written consent, of all or any part of the Real Property, or any interest in the Real Property.  A "sale or transfer" means the conveyance of Real Property or any right, title or interest in the Real Property; whether legal, beneficial or equitable; whether voluntary or involuntary; whether by outright sale, deed, installment sale contract, land contract, contract for deed, leasehold interest with a term greater than three (3) years, lease-option contract, or by sale, assignment, or transfer of any beneficial interest in or to any land trust holding title to the Real Property, or by any other method of conveyance of an interest in the Real Property.  However, this option shall not be exercised by Lender if such exercise is prohibited by federal law or by North Carolina law.

**TAXES AND LIENS.**  The following provisions relating to the taxes and liens on the Property are part of this Deed of Trust:

**Payment.**  Grantor shall pay when due (and in all events prior to delinquency) all taxes, special taxes, assessments, charges (including water and sewer), fines and impositions levied against or on account of the Property, and shall pay when due all claims for work done on or for services rendered or material furnished to the Property.  Grantor shall maintain the Property free of all liens having priority over or equal to the interest of Lender under this Deed of Trust, except for the lien of taxes and assessments not due and except as otherwise provided in this Deed of Trust.

**Right to Contest.**  Grantor may withhold payment of any tax, assessment, or claim in connection with a good faith dispute over the obligation to pay, so long as Lender's interest in the Property is not jeopardized.  If a lien arises or is filed as a result of nonpayment, Grantor shall within fifteen (15) days after the lien arises or, if a lien is

BK I 9 0 2 PG 0 7 0

filed, within fifteen (15) days after Grantor has notice of the filing, secure the discharge of the lien, or if requested by Lender, deposit with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender in an amount sufficient to discharge the lien plus any costs and reasonable attorneys' fees, or other charges that could accrue as a result of a foreclosure or sale under the lien.  In any contest, Grantor shall defend itself and Lender and shall satisfy any adverse judgment before enforcement against the Property.  Grantor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings.

**Evidence of Payment.**  Grantor shall upon demand furnish to Lender satisfactory evidence of payment of the taxes or assessments and shall authorize the appropriate governmental official to deliver to Lender at any time a written statement of the taxes and assessments against the Property.

**Notice of Construction.**  Grantor shall notify Lender at least fifteen (15) days before any work is commenced, any services are furnished, or any materials are supplied to the Property, if any mechanic's lien, materialmen's lien, or other lien could be asserted on account of the work, services, or materials.  Grantor will upon request of Lender furnish to Lender advance assurances satisfactory to Lender that Grantor can and will pay the cost of such improvements.

**PROPERTY DAMAGE INSURANCE.**  The following provisions relating to insuring the Property are a part of this Deed of Trust.

**Maintenance of Insurance.**  Grantor shall procure and maintain policies of fire insurance with standard extended coverage endorsements on a fair value basis for the full insurable value covering all Improvements on the Real Property in an amount sufficient to avoid application of any coinsurance clause, and with a standard mortgagee clause in favor of Lender, together with such other hazard and liability insurance as Lender may reasonably require.  Policies shall be written in form, amounts, coverages and basis reasonably acceptable to Lender and issued by a company or companies reasonably acceptable to Lender.  Grantor, upon request of Lender, will deliver to Lender from time to time the policies or certificates of insurance in form satisfactory to Lender, including stipulations that coverages will not be cancelled or diminished without at least thirty (30) days prior written notice to Lender.  Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Grantor or any other person.  Should the Real Property be located in an area designated by the Director of the Federal Emergency Management Agency as a special flood hazard area, Grantor agrees to obtain and maintain Federal Flood Insurance, if available, for the full unpaid principal balance of the loan and any prior liens on the property securing the loan, up to the maximum policy limits set under the National Flood Insurance Program, or as otherwise required by Lender, and to maintain such insurance for the term of the loan.

**Application of Proceeds.**  Grantor shall promptly notify Lender of any loss or damage to the Property.  Lender may make proof of loss if Grantor fails to do so within fifteen (15) days of the casualty.  Whether or not Lender's security is impaired, Lender may, at Lender's election, receive and retain the proceeds of any insurance and apply the proceeds to the reduction of the Indebtedness, payment of any lien affecting the Property, or the restoration and repair of the Property.  If Lender elects to apply the proceeds to restoration and repair, Grantor shall repair or replace the damaged or destroyed Improvements in a manner satisfactory to Lender.  Lender shall, upon satisfactory proof of such expenditure, pay or reimburse Grantor from the proceeds for the reasonable cost of repair or restoration if Grantor is not in default under this Deed of Trust.  Any proceeds which have not been disbursed within 180 days after their receipt and which Lender has not committed to the repair or restoration of the Property shall be used first to pay any amount owing to Lender under this Deed of Trust, then to pay accrued interest, and the remainder, if any, shall be applied to the principal balance of the Indebtedness.  If Lender holds any proceeds after payment in full of the Indebtedness, such proceeds shall be paid to Grantor as Grantor's interests may appear.

**LENDER'S EXPENDITURES.**  If Grantor fails   (A)  to keep the Property free of all taxes, liens, security interests, encumbrances, and other claims,   (B)  to provide any required insurance on the Property, or  (C)  to make repairs to the Property then Lender may do so.  If any action or proceeding is commenced that would materially affect Lender's interests in the Property, then Lender on Grantor's behalf may, but is not required to, take any action that Lender believes to be appropriate to protect Lender's interests.  All expenses incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Grantor.   All such expenses will become a part of the

BK I 9 0 2 PG 0 7 I

Indebtedness and, at Lender's option, will  (A)  be payable on demand;  (B)  be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either  (1)  the term of any applicable insurance policy; or  (2)  the remaining term of the Note; or  (C)  be treated as a balloon payment which will be due and payable at the Note's maturity.  The Deed of Trust also will secure payment of these amounts.  The rights provided for in this paragraph shall be in addition to any other rights or any remedies to which Lender may be entitled on account of any default.  Any such action by Lender shall not be construed as curing the default so as to bar Lender from any remedy that it otherwise would have had.

**WARRANTY; DEFENSE OF TITLE.**  The following provisions relating to ownership of the Property are a part of this Deed of Trust:

**Title.**  Grantor warrants that:  (a) Grantor holds good and marketable title of record to the Property in fee simple, free and clear of all liens and encumbrances other than those set forth in the Real Property description or in any title insurance policy, title report, or final title opinion issued in favor of, and accepted by, Lender in connection with this Deed of Trust, and  (b) Grantor has the full right, power, and authority to execute and deliver this Deed of Trust to Lender.

**Defense of Title.**  Subject to the exception in the paragraph above, Grantor warrants and will forever defend the title to the Property against the lawful claims of all persons.  In the event any action or proceeding is commenced that questions Grantor's title or the interest of Trustee or Lender under this Deed of Trust, Grantor shall defend the action at Grantor's expense.  Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of Lender's own choice, and Grantor will deliver, or cause to be delivered, to Lender such instruments as Lender may request from time to time to permit such participation.

**Compliance With Laws.**  Grantor warrants that the Property and Grantor's use of the Property complies with all existing applicable laws, ordinances, and regulations of governmental authorities.

**Survival of Promises.**  All promises, agreements, and statements Grantor has made in this Deed of Trust shall survive the execution and delivery of this Deed of Trust, shall be continuing in nature and shall remain in full force and effect until such time as Borrower's Indebtedness is paid in full.

**CONDEMNATION.**  The following provisions relating to condemnation proceedings are a part of this Deed of Trust:

**Proceedings.**  If any proceeding in condemnation is filed, Grantor shall promptly notify Lender in writing, and Grantor shall promptly take such steps as may be necessary to defend the action and obtain the award.  Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of its own choice, and Grantor will deliver or cause to be delivered to Lender such instruments and documentation as may be requested by Lender from time to time to permit such participation.

**Application of Net Proceeds.**  If all or any part of the Property is condemned by eminent domain proceedings or by any proceeding or purchase in lieu of condemnation, Lender may at its election require that all or any portion of the net proceeds of the award be applied to the Indebtedness or the repair or restoration of the Property.  The net proceeds of the award shall mean the award after payment of all reasonable costs, expenses, and attorneys' fees incurred by Trustee or Lender in connection with the condemnation.

**IMPOSITION OF TAXES, FEES AND CHARGES BY GOVERNMENTAL AUTHORITIES.**  The following provisions relating to governmental taxes, fees and charges are a part of this Deed of Trust:

**Current Taxes, Fees and Charges.**  Upon request by Lender, Grantor shall execute such documents in addition to this Deed of Trust and take whatever other action is requested by Lender to perfect and continue Lender's lien on the Real Property.  Grantor shall reimburse Lender for all taxes, as described below, together with all expenses incurred in recording, perfecting or continuing this Deed of Trust, including without limitation all taxes, fees, documentary stamps, and other charges for recording or registering this Deed of Trust.

**Taxes.**  The following shall constitute taxes to which this section applies:  (1)  a specific tax upon this type of Deed of Trust or upon all or any part of the  Indebtedness secured by this Deed of Trust;  (2)  a specific tax on

BK I 9 0 2 PG 0 7 2

Borrower which Borrower is authorized or required to deduct from payments on the Indebtedness secured by this type of Deed of Trust;   (3)   a tax on this type of Deed of Trust chargeable against the Lender or the holder of the Note; and   (4)   a specific tax on all or any portion of the Indebtedness or on payments of principal and interest made by Borrower.

**Subsequent Taxes.**   If any tax to which this section applies is enacted subsequent to the date of this Deed of Trust, this event shall have the same effect as an Event of Default, and Lender may exercise any or all of its available remedies for an Event of Default as provided below unless Grantor either   (1)   pays the tax before it becomes delinquent, or   (2)   contests the tax as provided above in the Taxes and Liens section and deposits with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender.

**SECURITY AGREEMENT; FINANCING STATEMENTS.**   The following provisions relating to this Deed of Trust as a security agreement are a part of this Deed of Trust:

**Security Agreement.**   This instrument shall constitute a Security Agreement to the extent any of the Property constitutes fixtures, and Lender shall have all of the rights of a secured party under the Uniform Commercial Code as amended from time to time.

**Security Interest.**   Upon request by Lender, Grantor shall take whatever action is requested by Lender to perfect and continue Lender's security interest in the Personal Property.   In addition to recording this Deed of Trust in the real property records, Lender may, at any time and without further authorization from Grantor, file executed counterparts, copies or reproductions of this Deed of Trust as a financing statement.   Grantor shall reimburse Lender for all expenses incurred in perfecting or continuing this security interest.   Upon default, Grantor shall not remove, sever or detach the Personal Property from the Property.   Upon default, Grantor shall assemble any Personal Property not affixed to the Property in a manner and at a place reasonably convenient to Grantor and Lender and make it available to Lender within three (3) days after receipt of written demand from Lender to the extent permitted by applicable law.

**Addresses.**   The mailing addresses of Grantor (debtor) and Lender (secured party) from which information concerning the security interest granted by this Deed of Trust may be obtained (each as required by the Uniform Commercial Code) are as stated on the first page of this Deed of Trust.

**FURTHER ASSURANCES; ATTORNEY-IN-FACT.**   The following provisions relating to further assurances and attorney-in-fact are a part of this Deed of Trust:

**Further Assurances.**   At any time, and from time to time, upon request of Lender, Grantor will make, execute and deliver, or will cause to be made, executed or delivered, to Lender or to Lender's designee, and when requested by Lender, cause to be filed, recorded, refiled, or rerecorded, as the case may be, at such times and in such offices and places as Lender may deem appropriate, any and all such mortgages, deeds of trust, security deeds, security agreements, financing statements, continuation statements, instruments of further assurance, certificates, and other documents as may, in the sole opinion of Lender, be necessary or desirable in order to effectuate, complete, perfect, continue, or preserve   (1)   Borrower's and Grantor's obligations under the Note, this Deed of Trust, and the Related Documents, and   (2)   the liens and security interests created by this Deed of Trust as first and prior liens on the Property, whether now owned or hereafter acquired by Grantor.   The lien of this Deed of Trust and the security interest granted hereby will automatically attach, without further act, to all after-acquired property attached to and or used in the operation of the Property or any part thereof.   Unless prohibited by law or Lender agrees to the contrary in writing, Grantor shall reimburse Lender for all costs and expenses incurred in connection with the matters referred to in this paragraph.

**Attorney-in-Fact.**   If Grantor fails to do any of the things referred to in the preceding paragraph, Lender may do so for and in the name of Grantor and at Grantor's expense.   For such purposes, Grantor hereby irrevocably appoints Lender as Grantor's attorney-in-fact for the purpose of making, executing, delivering, filing, recording, and doing all other things as may be necessary or desirable, in Lender's sole opinion, to accomplish the matters referred to in the preceding paragraph.

**FULL PERFORMANCE.**   If Borrower and Grantor pay all the Indebtedness when due, and Grantor otherwise performs all the obligations imposed upon Grantor under this Deed of Trust, Lender shall execute and deliver to Trustee a request for full reconveyance and shall execute and deliver to Grantor suitable statements of

BK1902PG073

termination of any financing statement on file evidencing Lender's security interest in the Rents and the Personal Property.   Any reconveyance fee required by law shall be paid by Grantor, if permitted by applicable law.

**DEFAULT.**  Each of the following and each Event of Default (as defined in the Note) described in Section 8 of the Note, at Lender's option, shall constitute an Event of Default under this Deed of Trust:

**Payment Default.**  Borrower fails to make any payment when due under the Indebtedness.

**Default on Other Payments.**  Failure of Grantor within the time required by this Deed of Trust to make any payment for taxes or insurance, or any other payment necessary to prevent filing of or to effect discharge of any lien.

**Break Other Promises.**  Borrower or Grantor breaks any promise made to Lender or fails to perform promptly at the time and strictly in the manner provided in this Deed of Trust or in any agreement related to this Deed of Trust.

**Compliance Default.**  Failure to comply with any other term, obligation, covenant or condition contained in this Deed of Trust, the Note or in any of the Related Documents.

**False Statements.**  Any representation or statement made or furnished to Lender by Borrower or Grantor or on Borrower's or Grantor's behalf under this Deed of Trust or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished.

**Defective Collateralization.**  This Deed of Trust or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Death or Insolvency.**  The death of Borrower or Grantor, the insolvency of Borrower or Grantor, the appointment of a receiver for any part of Borrower's or Grantor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower or Grantor.

**Taking of the Property.**  Any creditor or governmental agency tries to take any of the Property or any other of Borrower's or Grantor's property in which Lender has a lien.  This includes taking of, garnishing of or levying on Borrower's or Grantor's accounts with Lender.  However, if Borrower or Grantor disputes in good faith whether the claim on which the taking of the Property is based is valid or reasonable, and if Borrower or Grantor gives Lender written notice of the claim and furnishes Lender with monies or a surety bond satisfactory to Lender to satisfy the claim, then this default provision will not apply.

**Breach of Other Agreement.**  Any breach by Borrower or Grantor under the terms of any other agreement between Borrower or Grantor and Lender that is not remedied within any grace period provided therein, including without limitation any agreement concerning any indebtedness or other obligation of Borrower or Grantor to Lender, whether existing now or later.

**Events Affecting Guarantor.**  Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the Indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness.

**RIGHTS AND REMEDIES ON DEFAULT.**  Upon the occurrence of an Event of Default and at any time thereafter, Lender, at Lender's option, may exercise any one or more of the following rights and remedies, in addition to any other rights or remedies provided by law and in addition to any rights or remedies as provided for in Section 8 of the Note:

**Election of Remedies.**  All of Lender's rights and remedies will be cumulative and may be exercised alone or together.  An election by Lender to choose any one remedy will not bar Lender from using any other remedy.  If Lender decides to spend money or to perform any of Grantor's obligations under this Deed of Trust, after Grantor's failure to do so, that decision by Lender will not affect Lender's right to declare Grantor in default and to exercise Lender's remedies.

**Accelerate Indebtedness.**  Lender shall have the right at its option without notice to Borrower or Grantor to

BK I 9 0 2 PG 0 7 4

declare the entire Indebtedness immediately due and payable, including any prepayment penalty which Borrower would be required to pay.

**Express Power of Sale Provision.**  Upon the application or request of Lender, it shall be lawful for and the duty of the Trustee, and the Trustee is hereby authorized and empowered, to expose to sale and to sell the Property at public auction for cash, after having first complied with all applicable requirements of North Carolina law with respect to the exercise of powers of sale contained in deeds of trust or such other sales appropriate under the circumstances; and upon any such sale, the Trustee shall convey title to the purchaser in fee simple.  In the event of any sale under this Deed of Trust by virtue of the exercise of the powers granted in this Deed of Trust, or pursuant to any order and any judicial proceeding or otherwise, the Property may be sold as an entirety or in separate parcels and in such manner or order as Lender in its sole discretion may elect.  Trustee shall be authorized to hold a sale pursuant to North Carolina General Statute Chapter 45.  If Trustee so elects, Trustee may sell the Property covered by this Deed of Trust at one or more separate sales in any manner permitted by applicable North Carolina law, and any exercise of the powers granted in this Deed of Trust shall not extinguish or exhaust such powers, until the entire Property is sold or the Indebtedness is paid in full.  If such Indebtedness is now or hereafter further secured by any chattel mortgages, pledges, contracts of guaranty, assignments of lease or other security instruments, Lender may at its option exercise the remedies granted under any of the security agreements either concurrently or independently and in such order as Lender may determine.

**Foreclosure.**  With respect to all or any part of the Real Property, the Trustee shall have the right to foreclose by notice and sale, and Lender shall have the right to foreclose by judicial foreclosure, in either case in accordance with and to the full extent provided by applicable law.

**UCC Remedies.**  With respect to all or any part of the Personal Property, Lender shall have all the rights and remedies of a secured party under the Uniform Commercial Code.

**Collect Rents.**  Lender shall have the right, without notice to Borrower or Grantor to take possession of and manage the Property and collect the Rents, including amounts past due and unpaid, and apply the net proceeds, over and above Lender's costs, against the Indebtedness.  In furtherance of this right, Lender may require any tenant or other user of the Property to make payments of rent or use fees directly to Lender.  If the Rents are collected by Lender, then Grantor irrevocably designates Lender as Grantor's attorney-in-fact to endorse instruments received in payment thereof in the name of Grantor and to negotiate the same and collect the proceeds.  Payments by tenants or other users to Lender in response to Lender's demand shall satisfy the obligations for which the payments are made, whether or not any proper grounds for the demand existed.  Lender may exercise its rights under this subparagraph either in person, by agent, or through a receiver.

**Appoint Receiver.**  Lender shall have the right to have a receiver appointed to take possession of all or any part of the Property, with the power to protect and preserve the Property, to operate the Property preceding foreclosure or sale, and to collect the Rents from the Property and apply the proceeds, over and above the cost of the receivership, against the Indebtedness.  The receiver may serve without bond if permitted by law.  Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Property exceeds the Indebtedness by a substantial amount.  Employment by Lender shall not disqualify a person from serving as a receiver.

**Tenancy at Sufferance.**  If Grantor remains in possession of the Property after the Property is sold as provided above or Lender otherwise becomes entitled to possession of the Property upon default of Borrower or Grantor, Grantor shall become a tenant at sufferance of Lender or the purchaser of the Property and shall, at Lender's option, either  (1)  pay a reasonable rental for the use of the Property, or  (2)  vacate the Property immediately upon the demand of Lender.

**Other Remedies.**  Trustee or Lender shall have any other right or remedy provided in this Deed of Trust or the Note or available at law or in equity.

**Notice of Sale.**  Lender shall give Grantor reasonable notice of the time and place of any public sale of the Personal Property or of the time after which any private sale or other intended disposition of the Personal Property is to be made.  Reasonable notice shall mean notice given at least ten (10) days before the time of the sale or disposition.  Any sale of the Personal Property may be made in conjunction with any sale of the Real Property.

BK I 9 0 2 P G 0 7 5

**Sale of the Property.**   To the extent permitted by applicable law, Borrower and Grantor hereby waives any and all rights to have the Property marshalled.   In exercising its rights and remedies, the Trustee or Lender shall be free to sell all or any part of the Property together or separately, in one sale or by separate sales.   Lender shall be entitled to bid at any public sale on all or any portion of the Property.

**Attorneys' Fees; Expenses.**   If Lender institutes any suit or action to enforce any of the terms of this Deed of Trust, Lender shall be entitled to recover such sum as the court may adjudge reasonable as attorneys' fees at trial and upon any appeal.   Whether or not any court action is involved, and to the extent not prohibited by law, all reasonable expenses Lender incurs that in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the Indebtedness payable on demand and shall bear interest at the Note rate from the date of the expenditure until repaid.   Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, Lender's reasonable attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including reasonable attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services, the cost of searching records, obtaining title reports (including foreclosure reports), surveyors' reports, and appraisal fees, title insurance, and fees for the Trustee, to the extent permitted by applicable law.   Grantor also will pay any court costs, in addition to all other sums provided by law.

**Rights of Trustee.**   Trustee shall have all of the rights and duties of Lender as set forth in this section.

**POWERS AND OBLIGATIONS OF TRUSTEE.**   The following provisions relating to the powers and obligations of Trustee are part of this Deed of Trust:

**Powers of Trustee.**   In addition to all powers of Trustee arising as a matter of law, Trustee shall have the power to take the following actions with respect to the Property upon the written request of Lender and Grantor:   (a) join in preparing and filing a map or plat of the Real Property, including the dedication of streets or other rights to the public;   (b) join in granting any easement or creating any restriction on the Real Property; and   (c) join in any subordination or other agreement affecting this Deed of Trust or the interest of Lender under this Deed of Trust.

**Trustee.**   Trustee shall meet all qualifications required for Trustee under applicable law.   In addition to the rights and remedies set forth above, with respect to all or any part of the Property, the Trustee shall have the right to foreclose by notice and sale, and Lender will have the right to foreclose by judicial foreclosure, in either case in accordance with and to the full extent provided by applicable law.

**Trustee's Fees.**   The Trustee's commission shall be five percent (5%) of the gross proceeds of the sale for a completed foreclosure.   In the event foreclosure is commenced, but not completed, Grantor shall pay all expenses incurred by Trustee and partial commission computed on five percent (5%) of the outstanding Indebtedness, according to the following schedule:   one-fourth of the commission before Trustee issues a notice of hearing on the right to foreclosure; one-half of the commission after issuance of notice of hearing; three-fourths of the commission after a hearing; and the full commission after the initial sale.

**Express Power to Substitute a Trustee.**   Lender shall have the irrevocable right to remove at any time and from time to time without limit the Trustee named in this Deed of Trust without notice or cause and to appoint a successor by an instrument in writing, duly acknowledged, in such a form as to entitle such written instrument to be recorded in the State of North Carolina; and, in the event of the death or resignation of the Trustee named in this Deed of Trust, Lender shall have the right to appoint a successor by such written instrument, and any Trustee so appointed shall be vested with the title to the Property, and shall possess all the powers, duties and obligations herein conferred on the Trustee in the same manner and to the same extent as though the successor trustee were named in this Deed of Trust as Trustee.

**NOTICES.**   Any notice required to be given under this Deed of Trust, including without limitation any notice of default and any notice of sale shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Deed of Trust.   Any person may change his or her address for notices under this Deed of Trust by giving formal written notice to the other person or persons, specifying that the purpose of the notice is to change the person's address.   For notice purposes,

BK 1902PG076

Grantor agrees to keep Lender informed at all times of Grantor's current address.   Unless otherwise provided or required by law, if there is more than one Grantor, any notice given by Lender to any Grantor is deemed to be notice given to all Grantors.   It will be Grantor's responsibility to tell the others of the notice from Lender.

**MISCELLANEOUS PROVISIONS.**   The following miscellaneous provisions are a part of this Deed of Trust:

**Amendments.**   What is written in this Deed of Trust and in the Related Documents is Grantor's entire agreement with Lender concerning the matters covered by this Deed of Trust.   To be effective, any change or amendment to this Deed of Trust must be in writing and must be signed by whoever will be bound or obligated by the change or amendment.

**Caption Headings.**   Caption headings in this Deed of Trust are for convenience purposes only and are not to be used to interpret or define the provisions of this Deed of Trust.

**Merger.**   There shall be no merger of the interest or estate created by this Deed of Trust with any other interest or estate in the Property at any time held by or for the benefit of Lender in any capacity, without the written consent of Lender.

**Governing Law.   This Deed of Trust will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of North Carolina without regard to its conflicts of law provisions.   This Deed of Trust has been accepted by Lender in the State of North Carolina.**

**Choice of Venue.**   If there is a lawsuit, Grantor agrees upon Lender's request to submit to the jurisdiction of the courts of such county as Lender shall designate in the State of North Carolina, in the county in which Borrower's following address is located:   **Beaufort County, NC.**

**Joint and Several Liability.**   All obligations of Borrower and Grantor under this Deed of Trust shall be joint and several, and all references to Grantor shall mean each and every Grantor, and all references to Borrower shall mean each and every Borrower.   This means that each Grantor signing below is responsible for all obligations in this Deed of Trust.

**No Waiver by Lender.**   Grantor understands Lender will not give up any of Lender's rights under this Deed of Trust unless Lender does so in writing.   The fact that Lender delays or omits to exercise any right will not mean that Lender has given up that right.   If Lender does agree in writing to give up one of Lender's rights, that does not mean Grantor will not have to comply with the other provisions of this Deed of Trust.   Grantor also understands that if Lender does consent to a request, that does not mean that Grantor will not have to get Lender's consent again if the situation happens again.   Grantor further understands that just because Lender consents to one or more of Grantor's requests, that does not mean Lender will be required to consent to any of Grantor's future requests.   Grantor waives presentment, demand for payment, protest, and notice of dishonor.

**Severability.**   If a court finds that any provision of this Deed of Trust is not valid or should not be enforced, that fact by itself will not mean that the rest of this Deed of Trust will not be valid or enforced.   Therefore, a court will enforce the rest of the provisions of this Deed of Trust even if a provision of this Deed of Trust may be found to be invalid or unenforceable.

**Successors and Assigns.**   Subject to any limitations stated in this Deed of Trust on transfer of Grantor's interest, this Deed of Trust shall be binding upon and inure to the benefit of the parties, their successors and assigns.   If ownership of the Property becomes vested in a person other than Grantor, Lender, without notice to Grantor, may deal with Grantor's successors with reference to this Deed of Trust and the Indebtedness by way of forbearance or extension without releasing Grantor from the obligations of this Deed of Trust or liability under the Indebtedness.

**Time is of the Essence.**   Time is of the essence in the performance of this Deed of Trust.

**DEFINITIONS.**   The following words shall have the following meanings when used in this Deed of Trust:

**Beneficiary.**   The word "Beneficiary" means World Business Lenders, LLC, and its successors and assigns.

**Borrower.**   The word "Borrower" means **Bethel Equipment Company, Inc.** and includes all co-signers and co-makers signing the Note and all their successors and assigns.

BK1902PG077

**Deed of Trust.** The words "Deed of Trust" mean this Deed of Trust among Grantor, Lender, and Trustee, and includes without limitation all assignment and security interest provisions relating to the Personal Property and Rents.

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Grantor.** The word "Grantor" means **Michael W Bateman and Leonore A Bateman, as joint tenants with rights of survivorship.**

**Guarantor.** The word "Guarantor" means **Michael William Bateman.**

**Guaranty.** The word "Guaranty" means the guaranty from guarantor, endorser, surety, or accommodation party to Lender, including without limitation a guaranty of all or part of the Note dated **June 1, 2016**

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Improvements.** The word "Improvements" means all existing and future improvements, buildings, structures, mobile homes affixed on the Real Property, facilities, additions, replacements and other construction on the Real Property.

**Indebtedness.** The word "Indebtedness" means all principal, interest, and other amounts, costs and expenses payable under the Note or Related Documents, together with all renewals of, extensions of, modifications of, consolidations of and substitutions for the Note or Related Documents and any amounts expended or advanced by Lender to discharge Grantor's obligations or expenses incurred by Trustee or Lender to enforce Grantor's obligations under this Deed of Trust, together with interest on such amounts as provided in this Deed of Trust.

**Lender.** The word "Lender" means World Business Lenders, LLC, its successors and assigns. The words "successors or assigns" mean any person or company that acquires any interest in the Note.

**Note.** The word "Note" means the Business Promissory Note and Security Agreement dated **June 1, 2016**, in the original principal amount of **$110,000.00** from Borrower to Lender, together with all renewals, extensions, modifications, refinancings, consolidations, and substitutions thereof. The interest rate on the Note is **0.29972602739**7% per day. The Note is payable commencing on **06/03/2016** and on each Business Day thereafter until **06/02/2017** with each daily payment equaling **$720.24** followed by a final payment of **$719.08** on **6/05/2017** when any remaining outstanding Principal, interest and other unpaid charges shall be due and payable in full. The maturity date of the Note is **6/05/2017.**

**Personal Property.** The words "Personal Property" mean all equipment, fixtures, and other articles of personal property now or hereafter owned by Grantor, and now or hereafter attached or affixed to the Real Property; together with all accessions, parts, and additions to, all replacements of, and all substitutions for, any of such property; and together with all proceeds (including without limitation all insurance proceeds and refunds of premiums) from any sale or other disposition of the Property.

**Property.** The word "Property" means collectively the Real Property and the Personal Property.

**Real Property.** The words "Real Property" mean the real property, interests and rights, as further described in this Deed of Trust.

BK1902PG078

**Related Documents.** The words "Related Documents" mean the Guaranty, all promissory notes, credit agreements, loan agreements, environmental agreements, any and all other guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**Rents.** The word "Rents" means all present and future rents, revenues, income, issues, royalties, profits, and other benefits derived from the Property.

**Trustee.** The word "Trustee" means Old Republic National Title Insurance Company, whose address is 400 Second Avenue, South, Minneapolis, MN 55401 and any substitute or successor trustees.

BK1902PG079

GRANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS DEED OF TRUST, AND GRANTOR AGREES TO ITS TERMS.

GRANTOR:  Michael W Bateman a/k/a Michael William Bateman

X _~Michael W. B~_____

---

## INDIVIDUAL ACKNOWLEDGMENT

STATE OF ___NC_____                                                  )
                                                                             ) SS
COUNTY OF __Beaufort_____                                          )

I, ___Rick F Gagliano_____, a Notary Public for said County and State, certify that _Michael W Bateman_ personally came before me this day and acknowledged the due execution of the foregoing instrument.

Witness my hand and Notarial Seal this the ___01___ day of __June_____, 20 _16_.

_~Rick F Gagliano~_
Notary Public

My Commission Expires:

__02/20/2020_____

```
RICK F GAGLIANO
Notary Public
Beaufort County
North Carolina
My Commission Expires Feb 20, 2020
```

BK 1902PG080

GRANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS DEED OF TRUST, AND GRANTOR AGREES TO ITS TERMS.

GRANTOR:   Leonore A Bateman a/k/a Leonore Wallace Bateman

X _Lenore Bateman_

---

### INDIVIDUAL ACKNOWLEDGMENT

STATE OF _NC_                                               )
                                                           ) SS
COUNTY OF _BEAUFORT_                                        )

I, _Rick F Gagliano_ _____, a Notary Public for said County and State, certify that _Leonore A Bateman_ personally came before me this day and acknowledged the due execution of the foregoing instrument.

Witness my hand and Notarial Seal this the _01_ day of _June_, 20 _16_.

_____
Notary Public

My Commission Expires:

_02/20/2016_

```
RICK F GAGLIANO
Notary Public
Beaufort County
North Carolina
My Commission Expires Feb 20, 2020
```

BK1902PG081

Exhibit "A"

ADDENDUM TO Deed of Trust From

Leonore A Bateman, TO

Old Republic National Title Insurance

Company, TRUSTEE
World Business Lenders, LLC, BENEFICIARY

This Deed of Trust is given in the form of hypothecated security in that it is given to secure the debt of another, to wit:  the indebtedness evidenced by the Promissory Note dated 6/1/2016, in the amount of $110,000.00 which is made and delivered by Bethel Equipment Company, Inc. (hereby referred to as "Borrower") to and for the benefit of Beneficiary. Leonore A Bateman (hereinafter referred to as "Owner") will derive a material and direct benefit from the loan evidenced by the Note, and in accordance therewith, Owner agrees that such interest and benefit are sufficient consideration to support the Deed of Trust.   In the event of a default by Borrower under the Note, Owner expressly acknowledges, covenants, and agrees that Beneficiary shall have all rights and remedies hereunder as set forth for default just as if Owner had executed the Note.   Further, in the event of default under the Note, it shall likewise be deemed an event of default hereunder giving rise to all rights and remedies as set forth herein for default.   Owner expressly agrees that, upon such default, Beneficiary may elect to enforce any rights and remedies which it may have under this Deed of Trust.   The foregoing provisions are set forth and made by Owner as an inducement to Beneficiary to enter into the loan transaction secured hereby.

By: Leonore A Wallace a/k/a Leonore Wallace Bateman

Printed Name: _Leonore Bateman_

INDIVIDUAL ACKNOWLEDGMENT

STATE OF ____NC____ )

COUNTY OF ____BEAUFORT____ )SS

I, ____Rick F Gagliano____, a Notary Public for said County and State, certify that ____Leonore Bateman____ personally came before me this day and acknowledged the due execution of the foregoing instrument.
Witness my hand and Notarial seal this the ____01____ day of ____JUNE____, 20__16__.

_____
Notary Public
My Commission Expires: __02/20/2020__

RICK F GAGLIANO
Notary Public
Beaufort County
North Carolina
My Commission Expires Feb 20, 2020

BK1902PG082

**EXHIBIT "A"**

**LEGAL DESCRIPTION**

Situated in the City of Washington, County of Beaufort, State of North Carolina.


Beginning at an iron stob in the North side of the said Military Road, at the Southeast corner of Archie O'Neal, formerly Henry Mish, and running from said beginning point, South 58 degrees 50 minutes East 250 feet along the Northern sideline of said Military Road to an iron stob; thence, North 31 degrees 10 minutes East 250 feet to an iron stob; thence, North 58 degrees 50 minutes West 155 feet to an iron stob; thence, South 52 degrees West 266.5 feet to the point of beginning.


Being known as 4909 River Road, Washington, NC 27889.


Parcel ID# 04007990.

STATE OF NORTH CAROLINA     FILED IN THE GENERAL COURT OF JUSTICE
                                               SUPERIOR COURT DIVISION

COUNTY OF BEAUFORT      2019 JAN 22  A 11: 08 CASE NO. 17-CVS-724

WBL SPE I, LLC,              BEAUFORT CO., C.S.C.

                Plaintiff,        BY _____

     v.

BETHEL EQUIPMENT COMPANY, INC.
and MICHAEL W. BATEMAN,

                Defendants.

---

## <u>ORDER AND JUDGMENT</u>

THIS CAUSE, coming on to be heard and being heard before Jeffery B. Foster, Superior

Court Judge presiding over the November 26, 2018 Civil Session of Beaufort County Superior

Court, upon Plaintiff's Motion For Entry of Default Order and Judgment and, Alternatively, for

Summary Judgment; and

It appearing to the Court that Default has been entered against Defendants for their failure

to plead or otherwise defend as required by law; and

It further appearing to the Court that this is an action for a sum certain, or a sum which

can by computation be made certain, and for the possession of personal property, that Defendants

were properly served with a copy of the Summons and Complaint herein, and that Plaintiff is

entitled to the relief set forth herein.

Based on the Affidavit of Shannon Flood, the Court makes the following FINDINGS OF

FACT:

1.      On June 1, 2016, Defendant Bethel Equipment Company, Inc. (hereinafter

"Defendant Bethel Equipment") executed and delivered to World Business Lenders, LLC a


EXHIBIT
4

certain Business Promissory Note and Security Agreement (hereinafter "Note") in the sum of $110,000.00.

2.    Contemporaneously with the execution of the Note and to induce World Business Lenders, LLC to extend credit to Defendant Bethel Equipment, Defendant Michael W. Bateman (hereinafter "Defendant Bateman") executed and delivered to World Business Lenders, LLC a certain Continuing Guaranty.

3.    As shown in said Business Promissory Note and Security Agreement, Defendant Bethel Equipment granted World Business Lenders, LLC a security interest in and to the personal property described therein; to wit, including, but not limited to, all goods, farm products, inventory, equipment, furniture, money, instruments, accounts, accounts receivable, contract rights, documents, chattel paper, general intangibles (hereinafter "Collateral"), including, but not limited to, all products and proceeds of the Collateral and all additions and accessions to, replacements of, insurance proceeds in, and documents covering the Collateral, all property received wholly or partly in trade or exchange for Collateral, all leases of Collateral and all rents, revenues, issues, profits and proceeds arising from the sale, lease encumbrance, collection, or any other temporary or permanent disposition, of the Collateral or any interest therein, of Defendant Bethel Equipment with said security interest being granted and reserved to World Business Lenders, LLC until the balance due on the Note had been paid in full.

4.    World Business Lenders, LLC sold, transferred and assigned all of its right, title and interest in and to the Note and Continuing Guaranty to WBL SPO I, LLC for value. Thereafter, WBL SPO I, LLC sold, assigned and transferred the Note, Guaranty and Deed of Trust to WBL SPE II, LLC (hereinafter "Plaintiff").

5.    Defendants defaulted under the provisions of the Note and Guaranty by failing to

pay Plaintiff in accordance with the terms of the Note.

6.    Based on said default, Plaintiff declared the Note and Continuing Guaranty in default, accelerated the balance due and made demand upon Defendants for payment on the same and upon Defendant Bethel Equipment for possession of the Collateral.  Despite due demand, Defendants have failed and refused to pay the balance due or to surrender possession of the Collateral to Plaintiff.

7.    After giving Defendants credit for all payments and other off-sets due them, there is presently owing Plaintiff by Defendants, jointly and severally, the principal sum of $63,468.29 with interest accruing on said sum at the rate of $190.23 per day from and after March 13, 2017 until paid and for past-due interest in the sum of $6,087.41 and insufficient fund fees in the sum of $805.00.

8.    The Note and Guaranty provide that, if the Plaintiff retained counsel to enforce its rights thereunder, the Defendants agreed to pay Plaintiff's expenses, including its reasonable attorneys' fees, and all costs of collection.

9.    Pursuant to N.C. Gen. Stat. §6-21.2, World Business Lenders, LLC, by and through its attorney, provided due notice of its intention to enforce that attorneys' fees provisions if the default was not cured within five (5) days from the date of the letter.  Despite the proper notice, the Defendants failed to pay the outstanding balance due; and Plaintiff is therefore entitled to recover from the Defendants an additional amount of 15% of the outstanding balance representing Plaintiff's reasonable attorneys' fees pursuant to N.C. Gen. Stat. §6-21.2.

NOW THEREFORE, IT IS HEREWITH ORDERED, ADJUDGED AND DECREED as follows:

1.      That Plaintiff's Motion For Entry of Default Order and Judgment and, Alternatively, for Summary Judgment as to Defendants is granted; and

2.      That, in its First Claim for Relief, Plaintiff have and recover of Defendants, jointly and severally, the principal sum of Defendants, jointly and severally, the principal sum of $63,468.29 with interest accruing on said sum at the rate of $190.23 per day from and after March 13, 2017 until paid and for past-due interest in the sum of $6,087.41 and insufficient fund fees in the sum of $805.00, and together with the costs of this action, specifically including the sum of $13,163.93 as Plaintiff's attorneys' fees under N.C. Gen. Stat. §6-21.2; and

3.      That, in its Second Claim for Relief, Plaintiff is entitled to immediate possession of the Collateral of Defendant Bethel Equipment as set forth herein in paragraph 3 in the Findings of Fact;

4.      That within fifteen (15) days of the date of this Order, Defendants are ordered to surrender to Plaintiff possession of the Collateral including the books and records evidencing the same and/or to inform Plaintiff of the current whereabouts of the Collateral; and

5.      That, if Defendants fail to surrender to Plaintiff the personal property within the fifteen (15) day time period outlined in the prior paragraph 4 hereinabove, the Beaufort County Sheriff or the Sheriff of any other County where the Collateral is located is authorized and directed to seize the personal property from Defendants and deliver the same to Plaintiff.

This the 31st day of December, 2018.

JEFFERY B. FOSTER
SUPERIOR COURT JUDGE

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
GREENVILLE DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CASE NO. 19-01430-5-JNC |
| | ) | |
| Michael W. Bateman, | ) | CHAPTER 13 |
| | ) | |
| DEBTOR. | ) | |

## NOTICE OF MOTION

WBL SPE II, LLC has filed papers with the Court seeking to have relief from the automatic stay and co-debtor stay to foreclose on your Real Property and repossess the Collateral in the above captioned matter (i.e., a Motion for In Rem Relief).

Your rights may be affected.  You should read these papers carefully and discuss them with your attorney, if you have one in this bankruptcy case. (if you do not have an attorney, you may wish to consult one.)

If you do not want the Court to grant the relief sought in the motion, or if you want the Court to consider your views on the motion, then on or before May 9, 2019, you or your attorney must file with the Court, pursuant to Local Rules 9013-1 and 9014-1, a written response, a answer explain your position, and request for a hearing at:

Clerk, U.S. Bankruptcy Court
P.O. Box 791
Raleigh, NC 27602

If you mail your request/response to the Court for filing, you must mail it early enough so the Court will **receive** it on or before the date stated above.

You must also mail a copy to the Movant's Attorney, Debtor(s), Debtor(s) Attorney, Trustee, Bankruptcy Administrator, and other parties in interest.

If a response and a request for hearing is filed in writing on or before the date set above, a hearing will be conducted on the Motion at a date, time and place to be later set and all parties will be notified accordingly.

If you or your attorney do not take these steps, the Court may decide that you do not oppose the relief sought in the Motion and may enter an Order granting that relief.

This the ⟨25⟩ day of April, 2019.

Hutchens Law Firm, LLP
Attorneys for WBL SPE II, LLC

By: _____
William Walt Pettit
N.C. Bar No. 9407
6230 Fairview Road, Suite 315
Charlotte, N.C. 28210
Telephone: (704) 357-6262
Email: walt.pettit@hutchenslawfirm.com

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
GREENVILLE DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CASE NO. 19-01430-5-JNC |
| | ) | |
| Michael W. Bateman, | ) | CHAPTER 13 |
| | ) | |
| DEBTOR. | ) | |

## <u>CERTIFICATE OF SERVICE</u>

I, William Walt Pettit as attorney of record WBL SPE II, LLC, hereby certify that on the _25_ day of April, 2019, I served a copy of the Motion for In Rem Relief and Notice of Motion by and either electronic notice in accordance with the local rules or by depositing the same, enclosed in a postpaid, properly addressed wrapper, in an official depository under the exclusive care and custody of the United states Postal Service, said envelope being addressed as follows:

Michael W. Bateman                         Debtor
4959 River Road
Washington, NC 27889

Christopher Scott Kirk                      Debtor's Attorney
C. Scott Kirk, Attorney at Law, PLLC
(service by ECF)

Joseph A. Bledsoe, III                      Trustee
Chapter 13 Office
(service by ECF)

Hutchens Law Firm, LLP
Attorneys for  WBL SPE II, LLC

By: _____
William Walt Pettit
N.C. Bar No. 9407
6230 Fairview Road, Suite 315
Charlotte, N.C. 28210
Telephone: (704) 357-6262
Email: walt.pettit@hutchenslawfirm.com